IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONALD V. SMITH, | | |
| | Petitioner, | No. 2:11-cv-2320 GEB KJN P |
| vs. | | |
| SCOTT FRAKES and KAMALA D. HARRIS, | | ORDER AND |
| | Respondents. | FINDINGS & RECOMMENDATIONS |
| | / | |

I. Introduction

        Petitioner is a Washington state prisoner,[1] proceeding without counsel, with an application for petition of writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Before the court is respondents' motion to dismiss the pending habeas petition as barred by the statute of limitations.  For the reasons set forth below, respondents' motion should be granted.

---

[1] Petitioner is presently incarcerated at the Monroe Correctional Center ("Monroe") in Monroe, Washington, where he is serving a sentence of seventeen years to life.  According to respondents, Scott Frakes, not Scott Franks (as named by petitioner), is the current Superintendent of Monroe.  Because petitioner is not yet in the custody of the State of California, but is subject to a California detainer, subject to the criminal conviction at issue here, petitioner must name both the officer who has current custody as well as the Attorney General of California.  See Rule 2(b), Rules Governing Section 2254 Cases.  Accordingly, the Clerk of the Court is directed to change the caption as set forth above.

II. <u>Legal Standards</u>

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted. Section 2244(d)(1) of Title 8 of the United States Code provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2).

III. <u>Chronology</u>

For purposes of the statute of limitations analysis, the relevant chronology of this case is as follows:

1. On May 1, 2008, in the Yolo County Superior Court, petitioner pled guilty to first degree murder with special circumstances, and was sentenced on May 16, 2008, to an indeterminate state prison term of life without the possibility of parole. (Respondents' Lodged Document ("LD") 1.) Petitioner did not appeal the conviction.

////

2. On March 9, 2009,[2] petitioner filed a petition for writ of mandamus in <u>Smith v. People of the State of California</u>, 2:09-cv-0652 GEB EFB P.[3]  On May 14, 2010, the petition was denied for lack of jurisdiction.  <u>Id.</u>, Dkt. No. 12.

3. On July 1, 2010, pursuant to Rule 3(d) of the Federal Rules Governing Section 2254 Cases, petitioner filed a petition for writ of habeas corpus in <u>Smith v. Franks</u>, 2:10-cv-1918 JAM KJM P.  In the August 10, 2010 findings and recommendations in that case, petitioner was cautioned concerning the one year statute of limitations for filing non-capital habeas corpus petitions in federal court.  <u>Id.</u>, Dkt. No. 4 at 2 n.2.  On September 29, 2010, the petition was dismissed based on petitioner's failure to first exhaust state court remedies.

4. On October 13, 2010,[4] petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (LD 2.)  The petition was denied without comment on May 11, 2011.  (Dkt. No. 1 at 7.)

5. On August 24, 2011, pursuant to Rule 3(d) of the Federal Rules Governing Section 2254 Cases, the instant action was constructively filed.  (Dkt. No. 1.)

IV.  <u>Statutory Tolling</u>

The limitation period is statutorily tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ."  28 U.S.C. § 2244(d)(2).  A state petition is "properly filed," and qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000).  Statutory

---

[2] Although petitioner signed this petition for writ of mandamus on November 17, 2008, he mailed it to his mother for photocopying and filing with the court.

[3] A court may take judicial notice of court records.  <u>See</u> <u>MGIC Indem. Co. v. Weisman</u>, 803 F.2d 500, 505 (9th Cir. 1986); <u>United States v. Wilson</u>, 631 F.2d 118, 119 (9th Cir. 1980).

[4] This petition for post-conviction relief is given the benefit of the mailbox rule.  <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities).

3

1  tolling is not available for a state habeas petition that is "improperly filed" because untimely
2  under California law.  Lakey v. Hickman, 633 F.3d 782, 787 (9th Cir. 2011) (citing, *inter alia*,
3  Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).)  Thus, "[t]he period between a California lower
4  court's denial of review and the filing of an original petition in a higher court is tolled -- because
5  it is part of a single round of habeas relief -- [only] so long as the filing is timely under California
6  law."  Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010).

V.  Analysis

Initially, it appears that petitioner does not contend his petition was timely-filed.
(Dkt. No. 16, *passim*.)  Rather, petitioner argues he is entitled to an exception to the statute of
limitations bar under the miscarriage of justice and actual innocence exception.  However, "a
court must first determine whether a petition was untimely under the statute itself before it
considers whether equitable [or statutory] tolling should be applied."  Jorss v. Gomez, 311 F.3d
1189, 1192 (9th Cir. 2002).  Therefore, the court will first analyze the timeliness of petitioner's
filing, and then determine whether petitioner is entitled to an exception.

Petitioner's conviction became final on July 15, 2008, sixty days after the period
for filing a direct appeal expired.  See Cal. Rules of Court 8.308 (formerly Rule 30.1).  The
AEDPA statute of limitations period began to run the following day, on July 16, 2008.  Patterson
v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  Absent tolling, petitioner's last day to file his
federal petition was on July 16, 2009.

Petitioner is not entitled to tolling for the period of time his petition for writ of
habeas corpus was pending in the California Supreme Court because petitioner did not file the
petition until October 13, 2010, after the statute of limitations period had expired.  State habeas
petitions filed after the one-year statute of limitations period expires do not revive the statute of
limitations, and have no tolling effect.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.
2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended
before the state petition was filed"); Jimenez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001) (filing of

state habeas petition subsequent to the expiration of AEDPA's one-year time period bars federal habeas review).

Similarly, petitioner's prior two filings in the Eastern District of California do not toll the statute of limitations period. Petitioner's federal filings were not an "application for state post-conviction or other collateral review" under 28 U.S.C. § 2244(d)(2). Duncan v. Walker, 533 U.S. 167, 181 (2001) (statutory tolling provision contained in § 2244(d)(2) authorizes tolling while a petitioner is pursuing state, but not federal, post-conviction remedies). Thus, petitioner's 2009 and 2010 filings in federal court do not toll the limitations period.

The statute of limitations period expired on July 16, 2009. Petitioner did not file the instant petition until August 24, 2011. Thus, this action is time-barred unless petitioner can demonstrate that he is entitled to equitable tolling or some other exception to the limitations bar.

VI. Equitable Tolling

Petitioner does not address the issue of equitable tolling, but claims his pro se status entitles him to "a more relaxed standard," and argues his defense counsel failed to file a direct appeal. (Dkt. No. 16 at 2-3.) In reply, respondents argue that petitioner is not entitled to equitable tolling because petitioner was not diligent, and that the circumstances concerning defense counsel's failure to file an appeal, petitioner's failed efforts to file an appeal, or petitioner's ignorance of the law, do not justify equitable tolling. (Dkt. No. 21.)

In Holland v. Florida, 130 S. Ct. 2549, 2560, 2562, 2564 (2010), the Supreme Court recognized that the AEDPA statute of limitations "may be tolled for equitable reasons" when the petitioner makes a showing of "extraordinary circumstances." Id. To be entitled to equitable tolling, petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." Lakey, 633 F.3d at 786 (citations and internal quotation marks omitted).

////

1       The diligence prong in Pace requires the petitioner to show that he engaged in reasonably diligent efforts to file his § 2254 petition throughout the time the limitations period was running. Mendoza v. Carey, 449 F.3d 1065, 1071 n.6 (9th Cir. 2006) (stating that equitable tolling "requires both the presence of an extraordinary circumstance and the inmate's exercise of diligence" during the relevant time period). The petitioner must also demonstrate that he exercised reasonable diligence in attempting to file his habeas petition after the extraordinary circumstances began, otherwise the "link of causation between the extraordinary circumstances and the failure to file [is] broken." Spitsyn v. Moore, 345 F.3d 796, 802 (9th Cir. 2003). The "extraordinary circumstances" prong in Pace requires the petitioner to "additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time." Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotations and citations omitted). A petitioner who fails to file a timely petition due to his own lack of diligence is not entitled to equitable tolling. Tillema v. Long, 253 F.3d 494, 504 (9th Cir. 2001).

        Petitioner filed the instant petition a little over two years after the statute of limitations period expired. Petitioner claims that upon sentencing, petitioner asked defense counsel to file an appeal,[5] and a "statement of probable cause, for suppression of excludable

---

[5] Petitioner refers to "1237.5." (Dkt. No. 16 at 1.) California Penal Code § 1237.5 provides:

> No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met:
>
> (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.
>
> (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court.

evidence during plea negotiations." (Dkt. No. 16 at 1.) Petitioner claims that on June 5, 2008, three weeks after sentencing, petitioner was sent out of state. Upon arriving in Washington, petitioner did not receive notice of any appeal, and petitioner states he "could not call attorneys." (Dkt. No. 16 at 1.) Petitioner provides copies of letters he sent to the trial judge and to the Yolo County Superior Court in June and July of 2008 attempting to obtain appointment of appellate counsel. (Dkt. No. 1 at 88-89, 91-92.)

In addition, on July 3, 2008, an attorney in Washington interviewed petitioner, and on July 10, 2008, informed petitioner the law firm could not represent petitioner because the attorneys were not licensed to practice law in California. (Dkt. No. 1 at 96.) The attorney also advised petitioner that because petitioner signed a California agreement in which petitioner "agreed to waive [his] right to appeal the judgment and the decision [on] the motions by the trial court," it "could have [a] detrimental effect if [petitioner] wish[ed] to go forward with" the appeal. (Id.) Most importantly, the Washington attorney advised petitioner that he could file a habeas petition in the California state court. (Id.) On August 11, 2008, petitioner attempted to file a pro per appeal, but filed it in the court of appeals rather than the superior court. (Dkt. No. 1-1 at 1.)

Although petitioner claims he attempted to appeal, the letters he wrote to the Yolo County Court were requests for the appointment of appellate counsel and did not ask to appeal.[6] Petitioner fails to describe any efforts he personally made to follow up with the defense attorney petitioner asked to file the appeal. (Dkt. no. 1 at 45.) Although petitioner wrote letters to the

---

Id.

[6] Petitioner provided copies of his (1) June 28, 2008 letter to Yolo County Superior Court Judge Mock seeking appointment of counsel to file an appeal, (2) June 30, 2008 letter to the Clerk of the Yolo County Superior Court asking to have an appeal attorney assigned to his case; and (3) July 1, 2008 notice seeking appeal counsel in the Yolo County Superior Court. (Dkt. No. 1 at 88-91.) On July 22, 2008 Judge Mock, Yolo County Superior Court Judge, wrote petitioner and informed him that copies of petitioner's handwritten letters dated June 15, 2008, June 28, 2008, and July 30, 2008, were forwarded to the attorneys of record in petitioner's criminal case. (Dkt. No. 1 at 94.)

state superior and appellate courts, petitioner did not file a notice of appeal in the superior court. Moreover, petitioner describes no further action taken between August 11, 2008, when petitioner was aware no appeal had been filed, and November 17, 2008, the date petitioner signed the mandamus action later filed in federal court. Petitioner fails to explain why he did not file his collateral petition for writ of habeas corpus in state court shortly after petitioner learned no appeal was filed, or after the Washington attorney advised him of this process in California state court. Despite counsel's advice on July 10, 2008, petitioner did not file a habeas petition in state court until he filed the petition for writ of habeas corpus in the California Supreme Court on October 13, 2010. Petitioner filed nothing further between the November 17, 2008 date he signed the writ of mandamus filed in federal court, and the date the statute of limitations period expired on July 16, 2009. Petitioner fails to demonstrate that he was reasonably diligent throughout the time the limitations period was running. Mendoza, 449 F.3d at 1071 n.6; Pace, 544 U.S. at 419. Thus, even if extraordinary circumstances existed, petitioner is not entitled to equitable tolling because petitioner was not diligent.

To the extent petitioner claims that he is entitled to equitable tolling based on his pro se status or lack of knowledge of the law, petitioner is advised that a lack of knowledge of the law does not establish "extraordinary circumstances" preventing him from timely filing a federal habeas petition. The Ninth Circuit has found that a petitioner's pro se status and claims of ignorance of the law are insufficient to justify equitable tolling. See Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 909 (9th Cir. 1986) (pro se prisoner's illiteracy and lack of knowledge of law unfortunate, but insufficient to establish cause); Fisher v. Ramirez-Palmer, 219 F. Supp. 2d 1076, 1080 (E.D. Cal. 2002) ("[I]gnorance of the law does not constitute such extraordinary circumstances." ([Citations omitted.]).

In addition, to the extent that petitioner argues that he is entitled to equitable

tolling based on defense counsel's failure to file an appeal, petitioner is mistaken. First, as a condition of the plea agreement, petitioner waived "all right to appeal on both the judgment of the Court and any decisions on motions which precede this plea or judgment," but not for sentencing errors. (Dkt. No. 1-1 at 39.) Petitioner also confirmed that his lawyer explained the form and its entire contents to him, and he understood what the declaration said as well as the consequences of the declaration. (Dkt. No. 1-1 at 40.) Petitioner's defense attorney also signed the declaration. (Dkt. No. 1-1 at 41.) Second, in the petition, petitioner relies on Roe v. Flores-Ortega, 528 U.S. 470 (2000).[7] (Dkt. No. 1 at 45.) Failure to file an appeal if requested by a client is very serious, as explained in Roe. Id. However, the Roe decision did not involve the one-year limitations period. Roe, 528 U.S. 470. Thus, the Roe decision does not bear upon the relevant issue before the court of whether the petition is time-barred by operation of 28 U.S.C. § 2244(d). Finally, the Ninth Circuit has found that an attorney's negligent failure to perfect an appeal "ha[s] little to no bearing on his ability to file a timely federal habeas petition." Randle v. Crawford, 604 F.3d 1047, 1058 (9th Cir. 2010). "Counsel's failure to perfect an appeal simply mean[s] that [petitioner] had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action -- it did not prevent him from filing the petition." Id. The same analysis is true for petitioner here.

In addition, while egregious unprofessional conduct by a defense lawyer may constitute extraordinary circumstances justifying equitable tolling, Holland, 130 S. Ct. 2563-64, attorney negligence such as missing a filing deadline does not warrant equitable tolling. Id.

---

[7] In Roe, the defense attorney failed to file an appeal. Id. Roe attempted to file a notice of appeal about four months after sentencing, which was denied as untimely. Id. at 474. Roe then sought state habeas relief, which was unavailing. Id. The question posed in Roe was "[i]s counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?" Id. at 477. Addressing the merits of the underlying petition, the Supreme Court held that a claim of ineffective assistance of counsel with respect to advice and consultation regarding right to appeal, that is promptly raised by the prisoner, may be a basis for habeas relief in the form of permission to file a late appeal. Roe, 528 U.S. at 484 (emphasis added).

1  (citations omitted).  Also, the receipt of faulty legal advice from defense counsel does not support

2  a claim of equitable tolling.  Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001).

3         Finally, this court was not required, in the orders addressing petitioner's prior

4  filings in the Eastern District of California, to warn petitioner that the federal habeas petition

5  would later be time-barred if the federal petition was dismissed and petitioner returned to state

6  court to exhaust his claims.  Pliler v. Ford, 542 U.S. 225, 231-32 (2004) (district courts are not

7  required to warn pro se prisoners that their federal habeas petitions later would be time-barred if

8  they dismissed their federal petitions and returned to state court to exhaust their claims).

9         For all of the above reasons, and given the high threshold for equitable tolling,

10  Lakey, 633 F.3d at 786, petitioner's reasons for delay do not support equitable tolling.

11  VII.  Alleged Actual Innocence

12         Petitioner also argues that he is innocent of the underlying crime, and that

13  petitioner was coerced into pleading guilty, resulting in a miscarriage of justice.  Petitioner

14  contends that in light of the evidence that was suppressed, it is more likely than not that no

15  reasonable juror would find petitioner guilty beyond a reasonable doubt.  (Dkt. No. 16 at 3.)

16  Respondents argue that petitioner fails to present newly-discovered evidence, and that the

17  evidence upon which petitioner relies is not clearly exculpatory.  (Dkt. No. 21 at 6-7.)

18         The Supreme Court has held that a court may consider an otherwise procedurally

19  defaulted claim for habeas relief if the court's failure to hear the claim will result in a miscarriage

20  of justice, particularly in a case where the petitioner demonstrates "actual innocence."  Schlup v.

21  Delo, 513 U.S. 298, 324-29 (1995) ('[A]ctual innocence' means factual innocence, not mere

22  legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998).)  Further, the Ninth

23  Circuit has held that "where an otherwise time-barred habeas petitioner demonstrates that it is

24  more likely than not that no reasonable juror would have found him guilty beyond a reasonable

25  doubt, the petitioner may pass through the Schlup gateway and have his constitutional claims

26  heard on the merits."  Lee v. Lampert, 653 F.3d 929, 930 (9th Cir. 2011).  Schlup requires a

petitioner "to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Schlup, 513 U.S. at 324.  Petitioner must show that in light of all the evidence, including evidence not introduced at trial, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002) (stating that in order to be credible, a claim of actual innocence requires that the petitioner support his allegations of constitutional error with new reliable evidence that was not presented at trial) (quoting Schlup, 513 U.S. at 327).

Here, other than petitioner's conclusory claim that he is innocent, petitioner presents no newly-discovered evidence to support his argument. (Dkt. No. 16.)  Petitioner refers the court to his petition, where he claims that his participation in the sheriff's work program and his work schedule establish he was involved in these activities at the time of the murder. Petitioner provides inmate control cards from the work program, paystubs, health and welfare time sheets, and W-2 statements. (Dkt. No. 1 at 58-65.)  However, petitioner concedes that he was aware of these items either prior to his guilty plea or at the May 16, 2008 sentencing. (Dkt. No. 1 at 31-43.)

As argued by respondent, petitioner's account of the evidence he provided does not demonstrate his factual innocence.  Even if the court credited petitioner's account that he was working at the sheriff's work program on July 24, 2000, from 7:45 a.m. to 3:00 p.m., arrived home at 4:00 p.m., and then worked as a caregiver from 6:00 p.m. to 11:00 p.m. (dkt. no. 1 at 31-32), such a schedule does not provide an alibi for the time the victim was murdered.  Petitioner claims witness accounts state that on July 24, 2000, the victim arrived home at 4:00 p.m. (Dkt. No. 1 at 31-32.)  According to the grand jury transcript, the victim's body was discovered at 9:30 a.m. on July 25, 2000. (LD 10 at 70, 72-73.)  However, the autopsy examiner was only able to conclude, due to heat and other factors, that the victim was dead at least several hours at the time the body was examined on July 26, 2000. (LD 10 at 197-98.)  Thus, petitioner could have

committed the murder after 11:00 p.m. on July 24, 2000.

Moreover, the documents appended to the petition do not provide petitioner with an alibi. Most of the documents are not for the relevant time frame. (Dkt. No. 1 at 58-61, 79-80.) The pay warrant for July 16, 2000, to July 31, 2000, reflects 53 hours worked, but does not itemize dates and times worked. (Dkt. No. 1 at 62.) Although two pay stubs reflect 5 hours worked on July 24 and 25, 2000, no times are itemized, and the forms are completed and signed by only petitioner. (Dkt. No. 1 at 63, 78.) No impartial third party attests to their validity.

Also, petitioner's claims are refuted by his employer's statements given to investigators in 2006, that Karen Blakeman, although not sure, believed that on the night of the murder, she was the caregiver, and that she did not recall petitioner being in their apartment that night; and in 2008, that Karen Blakeman was the caregiver on July 24, 2000, and that petitioner did not work that night. (Dkt. No. 1 at 72, 77.) Moreover, on March 1, 2008, Mr. Blakeman confirmed that their employer records did not reflect the exact dates and times worked by caregivers. (Dkt. No. 1 at 72.)

Petitioner's claims are also refuted by his ex-wife Nancy Smith, who was petitioner's live-in girlfriend at the time. (LD 10 at 219, 256.) Ms. Smith testified before the grand jury that she picked petitioner up from the work program and returned him to the apartment they shared with petitioner's mother at 4:00 p.m. on July 24, 2000. (LD 10 at 218-19, 221-22.) Smith testified that petitioner immediately left the apartment to check the pool, but did not return until 1:00 or 2:00 the next morning. (LD 10 at 222-25.) When he returned, petitioner appeared to be upset, and carried a plastic bag. (LD 10 at 226.) Upon Smith's insistent questioning, petitioner started crying hysterically, and confessed to killing a woman when she came home while petitioner was robbing her apartment. (LD 10 at 227-29; 231-32.) Smith testified that the plastic bag petitioner carried contained costume jewelry, coins, and a key chain, and that she assisted petitioner in discarding evidence from the victim's apartment. (LD 10 at 230, 247, 251, 254.)

12

Finally, petitioner's DNA profile was found on the cigarette butts taken from the victim's vehicle, and his fingerprints were found on the victim's car, which was found parked in a different parking stall than the victim normally used. (LD 10 at 72, 104, 419-23, 429, 506.) Also, petitioner could not be eliminated as the source of DNA found on the victim's kitchen towel. (LD at 132, 423-27, 430.)

For all the above reasons, petitioner fails to present any new reliable evidence not presented at trial that shows it is more likely than not that no reasonable juror would find petitioner guilty beyond a reasonable doubt. Schlup, 513 U.S. at 324. Thus, petitioner is not entitled to pass through the Schlup "actual innocence" gateway, and the petition must be dismissed as time-barred.

VIII. Conclusion

IT IS HEREBY ORDERED that the Clerk of the Court shall change court records to reflect respondent's name is Scott Frakes, and to add Kamala D. Harris, California Attorney General, as a respondent. See pg. 1, n.1.

Because this action is barred by the statute of limitations, IT IS HEREBY RECOMMENDED that respondents' November 14, 2011 motion to dismiss (dkt. no. 10) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any reply to the objections shall be served and filed within fourteen days after

service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

smit2320.mtd